UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOHN LINDH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:09-CV-00215 JMS-WGH |
| | ) | |
| WARDEN, FEDERAL CORRECTIONAL | ) | |
| INSTITUTION, TERRE HAUTE, | ) | |
| INDIANA, | ) | |
| | ) | |
| Defendant. | ) | |

**Second Supplemental Declaration of John Phillip Walker Lindh**

Comes now John Phillip Walker Lindh, being duly sworn upon his oath, and says that:

1.      This Declaration is intended to supplement the declarations that I previously executed in this case.

2.      I continue to be confined in the Communications Management Unit ("CMU") at the Federal Correctional Institution in Terre Haute, Indiana.

3.      At the current time there are approximately 38 prisoners in the CMU.

4.      Of this number, approximately 23 of the prisoners are Muslim.

5.      I arrived at the CMU in October of 2007.

6.      When I arrived at the CMU, until approximately June of 2009, Muslim prisoners in the CMU, including myself, regularly prayed together in groups of 3-5 persons for daily prayers during the times that we were otherwise allowed out of our cells.  Early on, the groups were often significantly larger (more than ten), however, at some point we were restricted by staff in the number of participants allowed.

7.     These prayers did not occur in the multi-purpose room in the CMU, but in various places throughout the unit such as: the small outside recreation cages, the large outside recreation area, in the kitchen area, in individual cells, and in small indoor recreation rooms.

8.     The staff in the CMU were aware of our daily group prayers inasmuch as we were frequently personally observed by staff while we were praying and we were also observed by the cameras and listening equipment that are throughout the unit.

9.     At no time did these group prayers cause any problems or disruptions to the best of my knowledge.  Nor were they supervised in any way differently than other conduct on the unit.

10.     These group prayers outside of the multi-purpose room stopped altogether sometime after Warden Jett issued a memorandum in June of 2009, indicating that Muslim prisoners could not participate in group prayer, except for the Friday Jumah prayer.  Also around the same time, all prayers were prohibited outside of our assigned cells (even individual prayers).

11.     I have read the various declarations that were submitted in support of defendant's prior motion for summary judgment.

12.     It is true that prior to coming to the CMU I was disciplined, in 2003, for briefly speaking in Arabic in violation of special administrative measures that were imposed on me, but which have since been lifted.

13.     Prior to coming to the CMU I was also disciplined, in 2006, for: putting a chair on the tier outside of my cell and sitting in it contrary to an officer's order, rolling my pants cuffs up – so as to not violate Islam's proscription against wearing pants below the ankles, and an improper third party communication when a prisoner in another institution wrote an unauthorized letter to a prisoner in the prison in which I was confined asking that the recipient of the letter convey his greetings to me on his behalf.

14.    Since coming to the CMU I have been involved in two disciplinary incidents.  In the first, in early July of 2010, I was accused of refusing to obey an order and interfering with count when I engaged in a call to prayer.   Although I was accused of these two actions, I was found guilty only of refusing to obey an order.  I did not interfere with the count.  Indeed, I had been calling the call to prayer since 2008 without incident.

15.    And, in late July of 2010, I was found guilty of engaging in unauthorized prayers when I met with two other prisoners in a cell to engage in communal prayer.  This is precisely the activity that was formerly allowed on the unit.  We stopped this activity when we were told to do so.  I was found guilty of participating in an unauthorized gathering.

16.    I do not believe it is ideal or preferable that I engage in prayer in my cell in close proximity to my toilet.  No matter how much I clean this area it is not a place where anyone would wish to pray.  I did so in late July of 2010 because there was nowhere else to pray.  (This, in fact, is where all of us pray every day.  We are not allowed to pray anywhere else).

17.    I understand that the prison administration is unwilling to accommodate Muslim prisoners' need to pray in congregation outside of our cells at times when prisoners are locked in their cells and that it would be futile to demand that.

18.    However, they are not justified in denying communal prayer opportunities to Muslim prisoners in the CMU during the times that we are out of our cells and free to engage in  all sorts of communal activities.

19.    The inability to engage in daily prayers with other Muslim prisoners during the times we are out of our cells is imposing a substantial burden on the exercise of my religion.

20.    I do not feel that I am being challenging or defiant.  I recognize that as a prisoner many of my rights have been compromised and reduced.  However, I do want to stress the fact that in the

3

CMU prisoners regularly engage in a host of communal activities without ever being punished. These include such things as group sports, group card games, group board games, group discussions, group work-outs, group eating, group cooking, and group TV viewing. Only group prayer has resulted in punishment.

21.     This results in the strange situation where Muslim prisoners in the CMU can, and do every single day, gather together to engage in such group activities as those noted in paragraph 20, above, but cannot engage in group prayer.

22.     This is particularly true given that during the communal prayers there is absolutely no conversations or communications between the participants. Indeed, any deviation from the ritual prayers and movements invalidates the prayer.

23.     In order for a prayer to be communal it is necessary that the participants be together where they can see and hear each other.  Being in individual cells and praying at the same time does not make the prayer communal.  Furthermore, it is physically impossible. We cannot hear or see each other.  We are not allowed to shout to make ourselves heard.  If we were to should we would be punished according to the same rational that cause me to be punished for performing the call to prayer (as mentioned in paragraph 14 above).

24.     We are free to enter each other cells and talk privately.  Two prisoners are regularly in cells without, to the best of my knowledge, any punishment or warning by officers or other staff on the CMU and I am aware that frequently there are more than two people in cells.

25.     I did not physically observe the fight between a number of prisoners and prisoner Khan on October 7, 2009.  However, I am aware that prisoner Khan had not been the Amir for a number of months before this incident.  Furthermore, I am aware that the incident had nothing to

4

do with religious matters and that in fact both inmates Khan and Royer held the same position that congregation prayer is preferred, but not mandatory.

26.    Congregational Jumah prayer in the multi-purpose room has not caused any problems or conflicts of which I am aware.   This, in spite of the fact that it lasts between 30-60 minutes., whereas the five daily prayers only last about 5-10 minutes or less. If there is a conflict on a particular day for a particular daily prayer I would be willing to pray with other prisoners in other areas of the unit as we did for years.

27.    I am not aware of any "inter-religious conflict" that has been caused by the past communal prayer practices of the Muslim prisoners on the CMU.  The prayers are very short in time and are not disruptive.

28.    My religious beliefs continue to require that I engage in daily prayers with other Muslim prisoners to the extent that this is physically possible, that is, when we are not locked in our cells.

29.    I attend all the Jumah services in the CMU and I believe that all the Muslim prisoners in the CMU regularly attend these services.   I do not believe that any Muslim prisoners are pressured to attend them or have ever been in the past.

30.    It is currently Ramadan and Muslim prisoners in the CMU are being allowed to pray communally each day for the evening prayer.  No staff supervision is involved. All Muslim prisoners take part.  No problems have arisen from this.

**Verification**

I verify, under the penalty of perjury, that the foregoing representations are true.

Executed on:  ___8/22/2011___

_____
John Walker Lindh

Prepared by:

Kenneth J. Falk
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN 46202