UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOHN LINDH, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs.* | ) | 2:09-cv-00215-JMS-MJD |
| | ) | |
| WARDEN, Federal Correctional Institution, Terre Haute, Indiana, | ) ) | |
|     *Defendant*. | ) | |

## ORDER

Presently pending before the Court is Plaintiff's Motion to Hold Defendant in Contempt, [dkt. 209], which the Court **DENIES** for the reasons that follow.

### I.
#### BACKGROUND

Mr. Lindh brought the underlying action in this matter under the Religious Freedom Restoration Act of 1993 ("RFRA"), which provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of 'general applicability'" unless it demonstrates that "the application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that interest." 42 U.S.C. § 2000bb-1. The Court, after finding that the Warden "failed to establish either that the ban [on group prayer] is justified by a compelling interest or that it is the least restrictive means to further a compelling governmental interest," [dkt. 200 at 28], concluded that the Warden's then-policy banning group prayer in the Communications Management Unit ("CMU") violated RFRA with respect to Mr. Lindh "by denying him the ability to engage in daily congregate prayer during all times that the prisoners are otherwise released from their cells," [dkt. 201]. The Court struck the complete ban but afforded the

1

Warden 60 days to craft a less restrictive policy. The Court's judgment was not appealed.

On March 12, 2013, the Warden issued a bulletin stating the following, in relevant part:

> Inmates who wish to pray outside of their cell at times other than that of the normal weekly authorized group prayer are authorized to engage in congregate worship services in multi-purpose room #3 which has been repurposed as a prayer and meditation area for use by all denominations. **Use of the room is limited to 10 inmates at any given time.** Generally, this room will be open daily from 7-9 a.m., 1-3 p.m., and 6:30-8:30 p.m. Requests for utilization of this area outside these timeframes will be considered by the Warden and may be authorized so long as normal unit operations are not adversely impacted (i.e. count times, mainline, inmate lockdown periods, etc.). This room will be secured at all other times not scheduled for this use.
>
> In order to ensure a secure and orderly use of the room, inmate religious preference groups who wish to utilize the room for group prayer or meditation may do so by signing up for one (1) thirty minute time slot during each two hour block of time. A sign-up sheet will be posted by the prayer and meditation room for one day at the end of each month to allow each group to sign up for their thirty minute time slot for each time block. That schedule will be formalized and reviewed by Religious Services then posted by staff. A list of expectations for inmate behavior while utilizing the prayer and meditation room will be reviewed by Religious Services staff and posted for the inmate population.

[Dkt. 209-1 (original emphasis).]

On April 10, 2013, Mr. Lindh moved to hold the Warden in contempt, arguing that the March 12 policy violated the Court's order that Mr. Lindh have "the ability to engage in daily congregate prayer during all times that the prisoners are otherwise released from their cells." [Dkt. 209 at 3.] Mr. Lindh was particularly concerned that the three times daily prayer violated his sincerely held religious beliefs, because the Muslim daily prayer was sometimes required at four time periods per day when the prisoners were otherwise released from their cells. Subsequent to that filing, the parties had a telephonic status conference before Magistrate Judge Dinsmore during which the matter was discussed. [Dkt. 213.]

After the status conference, the Bureau of Prisons ("BOP") authorized a change in the policy, effective May 21, 2013, which the Warden disclosed in his supplemental response. [Dkt.

215.] The new policy no longer allows prisoners to meet together in a common room three times a day to pray, but rather permits inmate group prayer "only in their assigned cell with a second inmate so long as one of the inmates is assigned to the cell and it does not interfere with the safe, secure, and orderly running of the institution." [Dkt. 215-1.] The specifics of the altered policy were explained to the CMU inmates at a May 20, 2013 town meeting, and an Inmate Bulletin was issued. [Dkts. 215 at 1-2; 215-1.] Thus the original policy about which Mr. Lindh complained was no longer at issue. On May 24, 2013, Mr. Lindh filed a surreply in which he argued that the new policy likewise constitutes contempt of the Court's injunction. [Dkt. 216 at 2.]

## II.
### NATURE OF THE MOTION

"There is no such thing as an independent cause of action for civil contempt. Instead, civil contempt proceedings are considered to be part of the action from which they stem." *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993) (internal citation and quotation marks omitted). Given the "supplemental character" of civil contempt, the Court proceeds "in a more summary fashion" than it would for another type of proceeding. *Id*. While an evidentiary hearing is unnecessary if facts are not in dispute, *see Alexander v. Chicago Park Dist.*, 927 F.2d 1014, 1025 (7th Cir. 1991) (no evidentiary hearing necessary where relevant facts were not in dispute), the Court conducted an evidentiary hearing to fully develop the record.

Civil contempt sanctions are either coercive or remedial. *Bailey v. Roob*, 567 F.3d 930, 933 (7th Cir. 2009). "Coercive sanctions induce a party's compliance with a court order in the future, while remedial sanctions compensate an injured party for an opponent's past non-compliance." *Id*. Here, Mr. Lindh is only seeking coercive sanctions, which would compel the Warden's compliance with the Court's order that he be allowed to engage in congregate prayer at

all times when the prisoners are not otherwise locked in their cells. [Dkt. 211 at 4.]

## III.
### DISCUSSION

To prevail on a contempt petition, Mr. Lindh must demonstrate by clear and convincing evidence that the Warden "has violated the express and unequivocal command of a court order." *D. Patrick, Inc.*, 8 F.3d at 460 (emphasis omitted). Mr. Lindh has the burden of showing that:

(1) the order sets forth an unambiguous command;
(2) the Warden violated that command;
(3) the Warden's violation was significant, meaning that it did not substantially comply with the order; and
(4) the Warden failed to take steps to reasonably and diligently comply with the order.

*See Prima Tek II, L.L.C. v. Klerk's Plastic Industries, B.V.*, 525 F.3d 533, 542 (7th Cir. 2008). The fourth part of the test means that "[t]he district court does not, however, ordinarily have to find that the violation was 'willful' and may find a party in civil contempt if that party has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Goluba v. School Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995) (internal quotations omitted).

The parties do not dispute that the order set forth an unambiguous command; they only dispute whether the Warden has violated the order by instituting a policy that does not substantially comply with the order and by failing to take steps to reasonably and diligently comply. Nevertheless, the Court chooses to clarify its order to prevent future litigation.

**A. Clarification of the Court's Order**

In its judgment and permanent injunction issued on January 11, 2013, the Court stated the following:

> The Warden has violated Mr. Lindh's rights under the RFRA by denying him the ability to engage in daily congregate prayer during all times that the prisoners are otherwise released from their cells and a declaratory judgment, pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure is hereby

4

entered to that effect.

[Dkt. 201.] Mr. Lindh has argued that the "spirit" of that order "contemplates that prisoners will be praying outside of their cells." [Dkt. 216 at 2, 4.] While neither Mr. Lindh nor the Warden has placed at issue whether the above language is unambiguous, from the parties' attempts to divine the "spirit" of the order, it is evident to the Court that clarification of the order's meaning is necessary.

When the Court entered judgment in favor of Mr. Lindh and issued a permanent injunction "prohibiting the Warden from enforcing the policy against congregate prayer for Muslims, including Mr. Lindh, for whom daily congregate prayer is a sincerely held religious belief," the Court did so in light of evidence that CMU prisoners are free to assemble for nearly all manner of group activities besides prayer, including, but not limited to, playing basketball, watching television and movies, playing cards, discussing current events, and watching religious videos in Arabic. Specifically, the Warden failed to convince the Court that group prayer was distinguishable from these other activities as necessitating a greater level of supervision than the Warden provided for all of the other activities. The Court was unmoved then, and it remains unmoved that the Warden's current restrictions on group prayer actually further a compelling governmental interest.

Though not explicitly stated in the earlier judgment, the Court's allowance of "less restrictive measures" was in recognition of the Warden's limited discretion under RFRA. But that discretion is bounded by RFRA's requirements that only the least restrictive means may be used to substantially burden an inmate's sincerely held religious beliefs, and only if in furtherance of a compelling government interest. The Warden argues here that he "diligently attempted, and continues to search for ways to implement a policy and procedure that complies

with the Court's final judgment, while preserving a safe and orderly operation of the Unit." The factual background presented here does not support that conclusion. The Warden initially set aside a common room for group prayer three times daily. He subsequently revoked that access and now limits the prayer to two people and in-cell only. Given the early effort, it is evident to the Court that the Warden's current policy on group prayer does not constitute the least restrictive means of furthering safe and orderly operation, as RFRA requires. *See* 42 U.S.C. § 2000bb-1. However, before the Court can properly hold the Warden in contempt, a clear and unambiguous command needs to have been set forth.

For clarity, the Court provides the following unambiguous command and will allow the Warden thirty days from the date of this order to comply: **the Warden is to allow group prayer during every Muslim prayer time for which the inmates are not confined to their cells. While the Warden may place a limit on the location and number of inmates who may assemble in a single place, the limitations must be reasonable and in keeping with RFRA's requirement that they are the least restrictive means of furthering a compelling interest be employed. Put simply, just as inmates are free to assemble, socialize, and engage in other group activities in common, recreational areas during times they are released from their cells, so too must they be allowed to engage in group prayer in common, out-of-cell areas, which the Warden may designate in his discretion.**

The Court reminds the Warden that he would be well within his discretion to discipline or deny group prayer to any inmates who abuse the right to assemble, just as he would respond to misbehavior during any other group activity. In his discretion, the Warden may, for example, assign the inmates to prayer groups he chooses, designate specific rooms or times, and require rotation of the prayer leader, among other measures, to avoid the development of clique-like

behavior, inmate hierarchy, or to prevent any inmate defiance or any other prayer-related concerns the Warden has expressed, so long as the restrictions he places constitute the least restrictive means of ensuring order.

While it is not the Court's role to craft a policy for the Warden, the Court has provided the foregoing guidance in light of the Warden's request at the conclusion of oral argument on this matter that the Court elucidate the spirit of its order and provide more specific instruction on how the Warden might comply.

In light of this clarification, the Court will allow the Warden thirty days in which to craft a policy that complies with this Court's clarified order that the prisoners be allowed to engage in group prayer at all prayer times during which they are otherwise released from their cells. *See Hall v. Stone*, 170 F.3d 706, 708 (7th Cir. 1999) (allowing the Warden thirty days to demonstrate that an "appropriate system" is in place that will prevent recurrence of the failure to comply).

## IV.
## CONCLUSION

For the above-stated reasons, the Court **DENIES** Mr. Lindh's Motion to Hold Defendant in Contempt, [dkt. 209], as the Court finds its earlier order was not unambiguous and required clarification. Within this order, the Court has clarified its earlier order with an unambiguous command, and it **ORDERS** the Warden to consider his current policy in light of that command and comply within thirty days.

07/19/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to counsel of record**